KENNEDY *v.* STATE BOARD OF REGISTRATION IN MEDICINE.

1. STATUTES — PARTIAL INVALIDITY — EFFECT ON REMAINDER OF STATUTE—PHYSICIANS.

The argument that those parts of subdivision 6 of section 3 of Act No. 191, Pub. Acts 1903, providing for refusal of a certificate and the revocation of one already granted a practitioner in medicine for unprofessional and dishonest conduct of a character likely to deceive the public, are unconstitutional because failing to advise the practitioner in advance what acts may be a violation of their provisions, presents no reason for declaring invalid that part of the subdivision giving the board of registration authority to revoke a certificate for inserting an advertisement in a newspaper relative to venereal diseases.

2. CONSTITUTIONAL LAW—LICENSE TO PRACTICE MEDICINE—REVOCATION—JUDICIAL ACT—VALIDITY OF STATUTE.

Subdivision 6, section 3, Act No. 191, Pub. Acts 1903, giving the State board of registration in medicine power to revoke the certificate of a practitioner for publishing certain advertisements, is not unconstitutional because conferring judicial powers upon the board, nor because not specifically providing for a review of the acts of the board by a court.

Appeal from Wayne; Mandell, J.    Submitted April 12, 1906.    (Docket No. 61.)    Decided July 23, 1906.

Bill by James D. Kennedy against the State board of registration in medicine to enjoin the revocation of complainant's certificate of registration as a physician and surgeon. From a decree dismissing the bill, complainant appeals. Affirmed.

*Alex. J. Groesbeck* and *Seward L. Merriam*, for complainant.

*John E. Bird*, Attorney General (*Charles W. McGill* and *George S. Law*, of counsel), for defendants.

CARPENTER, C. J. Complainant is a licensed physician and has been engaged in the practice of his profession in the city of Detroit in this State for several years. The individual defendants are the members of the State board of registration in medicine. That board was created by Act No. 237 of the Public Acts of 1899. On the 30th of December, 1903, defendants notified complainant that he was "charged with having inserted or caused to be inserted under date of September 19, 1903, a certain advertisement in the Evening News, a newspaper printed and published in the city of Detroit, Wayne county, State of Michigan, a copy of said advertisement being hereto annexed, relative to venereal diseases, and containing matter of an obscene and offensive nature derogatory to good morals," and ordered him to show cause on January 21, 1904, at 3 p. m. "why your certificate of registration as a physician and surgeon * * * should not be revoked under and pursuant to subdivision 6 of section 3, Act No. 237 of the Public Acts of 1899, as amended by Act No. 191 of the Public Acts of 1903." Complainant instituted this suit in chancery, charging that defendants are prejudiced and have prejudged his case, and that subdivision 6 of section 3 of Act No. 191 of the Public Acts of 1903 was unconstitutional, praying that defendants be enjoined from revoking his certificate. Defendants answered. The case was heard in the lower court upon testimony taken in open court and a decree therein entered

dismissing complainant's bill. From that decree complainant appeals to this court.

We agree with the learned trial judge—whose carefully prepared opinion is a part of the record in this case—that the testimony "adduced at the hearing utterly failed, to sustain said first contention," viz., the contention that defendants are prejudiced against complainant and have prejudged his case. The only question remaining for our consideration relates to the constitutionality of said subdivision 6 of section 3. That subdivision reads:

"The board of registration in medicine shall refuse to issue a certificate of registration provided for in this section to any person guilty of grossly unprofessional and dishonest conduct of a character likely to deceive the public, and said board shall, after due notice and hearing, revoke a certificate issued subsequent to the date of the passage of this act, or subsequent to the date of the passage of Act No. 237 of the Public Acts of 1899, for like cause or for offenses involving moral turpitude, habitual intemperance, the drug habit, or for fraud or perjury in connection with obtaining of a certificate of registration or for a certificate obtained or issued through error, when such offenses shall have been legally established in a court of competent jurisdiction: *And provided further*, after the passage of this act, the board may at its discretion revoke the certificate of registration, after due notice and hearing of any registered practitioner who inserts any advertisement in any newspaper, pamphlet, circular, or other written or printed paper, relative to venereal diseases or other matter of any obscene or offensive nature derogatory to good morals."

In support of his contention that this section is unconstitutional, complainant cites several cases. *Matthews* v. *Murphy*, 23 Ky. Law Rep. 750 (54 L. R. A. 415); *Ex parte McNulty*, 77 Cal. 164; *Hewitt* v. *Board of Medical Examiners*, 148 Cal. 590. The strongest and best reasoned of these cases is *Matthews* v. *Murphy*. That case alone will receive consideration because the grounds upon which it is held inapplicable makes all the others inapplicable. In that case it was held that a statute giving

the State board of health authority to revoke a certificate to practice medicine on proof that the holder was guilty of "grossly unprofessional conduct of a character likely to deceive or defraud the public," was unconstitutional upon the ground that the statute does not advise the physician—

"In advance what act or acts may be in violation of its provisions. * * * He might do an act which he regarded as entirely proper, which neither violated moral law nor involved turpitude, still such acts might, in the opinion of the State board of health, amount to unprofessional conduct, and which in its opinion did or was calculated to deceive or defraud the public. * * * The legislature, in effect, has attempted to commit to the State board of health the right, after the physician has done some act, to determine what its effect is to be, and, if in its judgment he should be deprived of the right to practice his profession, it can inflict the punishment upon him by revoking his license."

This reasoning presents no argument for declaring unconstitutional that part of subdivision 6, under which defendants are proceeding to try complainant, viz., that giving them authority to revoke his certificate because he inserted an advertisement in a newspaper relative to venereal diseases. Indeed, in deciding *Matthews* v. *Murphy*, the court recognize the constitutionality of such a law. This is shown by the following quotation from its opinion, viz.:

"If the legislature desires to declare for what acts or conduct a physician's license to practice medicine shall be revoked it is competent to do so, and to vest in some tribunal authority to investigate and try the charge which may be made under such a statute."

Is the law which authorized defendants to revoke complainant's certificate on the ground that he inserted an advertisement in the newspaper relative to venereal diseases unconstitutional? Complainant contends that it is and advances many reasons in support of that contention. It may fairly be said that all those reasons rest upon the

assumption that the revocation of that certificate is an exercise of judicial power. All of complainant's objections to the constitutionality of the law are completely answered by saying that this assumption is unfounded. This is shown so clearly by the opinion of the supreme court of Minnesota in *State, ex rel. Chapman,* v. *Board of Medical Examiners,* 34 Minn. 389, that we make the argument in that opinion a part of this:

"The radical fallacy in this chain of argument is the assumption that the revocation of such a license is the exercise of judicial power. 'Due process of law,' or 'the law of the land' (which means the same thing), is not necessarily judicial proceedings. Private rights and the enjoyment of property may be interfered with by the legislative or executive, as well as the judicial, department of the government. When it is declared that a person shall not be deprived of his property without 'due process of law' it means such an exercise of the powers of government as the settled maxims of law permit and sanction, under such safeguards as these maxims prescribe for the class of cases to which the one in question belongs. Cooley on Constitutional Limitations (7th Ed.), p. 506. This constitutional guaranty, which is as old as Magna Charta, as it is found in this or an equivalent form in every American Constitution, is intended to secure the citizens from the arbitrary exercise of the powers of government, unrestrained by the established principles of right and distributive justice. The validity of a statute which interferes with a man's enjoyment of his property is to be tested by those principles of civic and constitutional protection which have become established in our system of laws. *Bank of Columbia* v. *Okely,* 4 Wheat. (U. S.) 235; *Murray's Lessee* v. *Hoboken Land & Improvement Co.,* 18 How. (U. S.) 272; *Davidson* v. *New Orleans,* 96 U. S. 97; Cooley on Constitutional Limitations (7th Ed.), p. 505.

"Taxation, in one sense, takes a man's property, yet it was never suggested that proceedings to enforce and collect a tax must be judicial. So, the exercise of the general police power of the State often materially interferes with or restricts a person's enjoyment of his property, yet it was never heard that, for that reason, it was the exercise of judicial power, or that, if not exercised by judicial

proceedings in court, it was not 'due process of law,' or 'the law of the land.'

"It has never been held that the granting, or refusing to grant, such a license as this was the exercise of judicial power, and in fact this is not claimed in this case; and there is no possible distinction in this respect between refusing to grant a license and revoking one already granted. Both acts are an exercise of the police power. The power exercised and the object of its exercise is, in each case, identical, viz., to exclude an incompetent or unworthy person from this employment. Therefore the same body which may be vested with the power to grant, or refuse to grant a license, may also be vested with the power to revoke. The statutes of all the States are full of enactments giving the power to revoke licenses of dealers, innkeepers, hackmen, draymen, pawnbrokers, auctioneers, pilots, engineers, and the like, to the same bodies, boards, or officers who are authorized to issue them, such as city councils, county commissioners, selectmen, boards of health, boards of excise, etc. The constitutionality of such laws, as a valid exercise of the police power, has often been sustained, and, indeed, rarely questioned. Cooley on Constitutional Limitations (7th Ed.), pp. 399, 890, and cases cited."

This doctrine is supported by other authorities. See *Meffert* v. *State Board of Medical Registration*, 66 Kan. 710 (1 L. R. A. [N. S.] 811); *State, ex rel. Burroughs*, v. *Webster*, 150 Ind. 607 (41 L. R. A. 212); *Dent* v. *West Virginia*, 129 U. S. 114, and, so far as we have been able to discover, there is no authority against it.

Complainant insists that these cases are not authoritative because the statutes there upheld provided for "the right of appeal to a competent court, * * * so that if any constitutional right has been invaded the act was merely preliminary and subject to correction in a trial court." As I understand this argument, it is not contended that such statutes are unconstitutional unless they contain a provision for a review by a court of whatever the board or investigating tribunal is authorized to do, and if that contention were made it is answered by the reasoning

quoted from the Minnesota case. The proposition upon which the argument rests is that a statute cannot deprive one of the right to seek redress in a court for the invasion of a constitutional right. This proposition is sound and receives our assent, and is not violated by the statute in question. If that statute is observed, it follows from what has already been said that no one will be deprived of a constitutional right, and in that case a provision for an appeal to a court is not essential. If, through nonobservance of the statute, complainant or any other physician is deprived of a constitutional right, there is nothing therein which prevents his obtaining adequate redress in a court.

The decree dismissing the bill is affirmed.

MCALVAY, GRANT, MONTGOMERY, and MOORE, JJ., concurred.