GARFORD TRUCKING, INCORPORATED, A CORPORATION OF THE STATE OF NEW JERSEY, PROSECUTOR, v. HAROLD G. HOFFMAN, COMMISSIONER OF MOTOR VEHICLES OF THE STATE OF NEW JERSEY, RESPONDENT.

Submitted May 11, 1934—Decided March 27, 1935.

Before Justices HEHER and PERSKIE.

For the prosecutor, *Morris Spritzer.*

For the respondent, *David T. Wilentz,* attorney-general.

The opinion of the court was delivered by

PERSKIE, J.  The writ brings up for review the revocation of the registration certificates, then in the name of the prosecutor, pursuant to chapter 116 (*Pamph. L.* 1929, *p.* 195; amended by chapter 169 (*Pamph. L.* 1931, *p.* 334).  Financial Responsibility law.)

Section 1(A) of the act, as amended, provides, *inter alia,* as follows:

"The Commissioner of Motor Vehicles &ast; &ast; &ast; shall require from any person who &ast; &ast; &ast; while operating any motor vehicle, shall have been concerned in any motor vehicle accident resulting in the death of, or injury to, any person, or damage to property to the extent of at least one hundred dollars ($100.00), or in the discretion of the commissioner from the person in whose name such motor vehicle is registered, or both &ast; &ast; &ast; proof of financial responsibility to satisfy any claim for damage by reason of personal injuries to, or the death of, any one person of at least five thousand dollars ($5,000.00) or by reason of personal injuries to, or the death of, more than one person on account of any such accident, of at least ten thousand dollars ($10,000), and for damages to property of at least one thousand dollars ($1,000). &ast; &ast; &ast; If any person shall fail to furnish such proof, said commissioner shall, until such proof be furnished, suspend or revoke the license of such person to operate a motor vehicle or refuse to return any license which shall have been suspended or revoked, or suspend or revoke the registration of any such motor vehicle, or refuse thereafter to register any motor vehicle transferred by him *if it shall not appear to said commissioner's satisfaction that such transfer is a bona fide* sale &ast; &ast; &ast;." (Italics ours.)

Section B of the same act provides for the "forthwith suspension" of a license by the commissioner upon receiving a certified copy of a transcript of final judgment against the holder of a license, from the court in which it was recorded, and which judgment remains unsatisfied more than thirty days after the same shall become final and within which time no appeal of said judgment has been taken, &c.; "and shall remain so suspended and shall not be renewed, *nor shall any motor vehicle be thereafter registered in his name while any such judgment remains unstayed, unsatisfied and subsisting and until every such judgment is satisfied or discharged and until the said person gives proof of his ability to respond in damages as required in this act, for future* accidents. &ast; &ast; &ast;" (Italics ours.)

On October 24th, 1932, one John A. Wickstrom obtained

a judgment against Anton, Ignatz and Joseph Krosnowski, individually and trading as Garford Trucking Company, in the Middlesex County Circuit Court, for $2,500 for injuries sustained by him, as a result of an automobile collision in July, 1931, with a motor truck belonging to the aforesaid firm. The judgment remaining unsatisfied, the clerk of Middlesex county forwarded a certified copy of the said judgment to the commissioner.

On April 12th, 1932, Anton, Ignatz and Joseph Krosnowski incorporated, under the laws of our state, using the corporate name of Garford Trucking, Incorporated. The eleven automobile trucks, the licenses for which are the subject-matters of this case, were transferred by the aforesaid judgment debtors to the corporation, the prosecutor herein. All of the transfers were made after the accident and some after the date of the judgment. Some payment had been made by them on account of the judgment but at the time of the revocations complained of a substantial part thereof remained unpaid.

Thereupon the commissioner advised the prosecutor that, by reason of the unpaid judgment against the judgment debtors, it would be obliged to show cause why the registration certificates heretofore obtained by the prosecutor should not be revoked. He fixed December 6th, 1933, at his offices, in Trenton, New Jersey, as the time and place where he would conduct a hearing. At the hearing prosecutor was represented by counsel. The deputy commissioner announced that he was ready to hear the evidence on the part of the prosecutor. Counsel for the prosecutor objected to the procedure, and urged that his client was entitled to have first presented the witnesses and proofs upon which respondent contended that the ownership of the trucks by prosecutor was not *bona fide* and that he was entitled to the right of cross-examination and not until these rights were observed would he offer any testimony. The deputy commissioner then stated that the records in his office, in this matter, included, among other things, the transcript of the unpaid judgment against the judgment debtors; that prosecutor's

certificate of incorporation disclosed that the incorporators thereof were the same three persons against whom the judgment had been recovered and which judgment remains unsatisfied; that the transfer record of certain motor vehicles to the prosecutor, formerly belonging to the incorporators, did not appear to his satisfaction to be *bona fide* sales. Counsel for prosecutor offered no proof. He did, however, submit a brief restating prosecutor's position in the premises; succintly stated it is, as it was below, that it is "not a judgment debtor;" that the *bona fides* of the transfer was a subject to be determined in the Court of Chancery only, and, therefore, the commissioner was without jurisdiction in the premises.

The deputy commissioner concluded that since "there has been no proof of financial responsibility filed by the Garford Trucking Company, Incorporated, or by the individuals trading as the Garford Trucking Company, and judgment has not been satisfied," and "while I do not possess and do not attempt to exercise any judicial authority to determine the rightful ownership of the vehicles, I have concluded that the registration issued and now held in the name of the Garford Trucking Company, Incorporated, should be revoked in accordance with the provisions of chapter 116 (*Pamph. L.* 1929), not being satisfied that the sale of the vehicles as herein set forth was a *bona fide* sale, the evidence indicating that the Garford Trucking Company, Incorporated, was organized by the judgment debtors, Anton Krosnowski, Ignatz Krosnowski and Joseph Krosnowski, to evade payment of the judgment and the provisions of the Financial Responsibility law requiring the filing of an insurance certificate." Prosecutor's certificates of registration were revoked.

In support of prosecutor's contention that the revocations were illegal it is urged that the Financial Responsibility act is unconstitutional in that (1) it fails to provide or specify a method of procedure for making it appear to the commissioner's satisfaction that a transfer is a *bona fide* sale; (2) that it deprives the Court of Chancery of its jurisdiction to determine the question raised under the first point; and that

the commissioner, in this case, disregarded the fundamental law of proof. We think that these objections are without substance.

The constant increased use of the highways by those operating motor vehicles has greatly increased the dangers of bodily harm and death. It is commonly known that the injuries and fatalities resulting from automobile accidents on the highways are appalling. In the desire to eliminate or lessen these resultant consequences, to secure greater public safety, states have from time to time, by legislation, sought to regulate the ownership and operation of these vehicles.

Substantially similar legislation, to that herein complained of, has been enacted by many of our sister states. Courts, state and federal, have uniformly upheld and sustained, under the police power, such regulatory legislation provided such regulation bears a direct relationship to the public safety; and that it is reasonable and not arbitrary. The Financial Responsibility law of our state seeks to impose a penalty not for the failure to pay a judgment, that is merely incidental, but rather does it impose a penalty for negligent driving. It, therefore, bears a direct relationship to public safety; it is fair and reasonable and is not arbitrary. The following are but a few of the many illustrative cases: *West* v. *Asbury Park*, 89 *N. J. L.* 402; *Peoples Rapid Transit Co.* v. *Atlantic City*, 105 *Id.* 286; *affirmed*, 106 *Id.* 587; *Garneau* v. *Eggers*, 113 *Id.* 245; *Watson* v. *State Division of Motor Vehicles (Cal.)*, 298 *Pac. Rep.* 481; *Hendrick* v. *Maryland*, 235 *U. S.* 610; 59 *L. Ed.* 385; *Kane* v. *New Jersey*, 242 *U. S.* 160; 61 *L. Ed.* 223; *In re Opinion of the Justices (Supreme Court of New Hampshire*, 1925), 129 *Atl. Rep.* 117; *Morris* v. *Duby*, 274 *U. S.* 135; 71 *L. Ed.* 966; *Standard Oil Co.* v. *Marysville*, 279 *U. S.* 582, 586; 73 *L. Ed.* 856; *Sproles* v. *Binford*, 286 *U. S.* 374, 388, 389; 76 *L. Ed.* 1167.

It is within the legislative power of a state to enact that no person shall have a license to operate a motor vehicle on the public ways until such person has satisfied an outstanding judgment against him founded on previous operation of

a motor vehicle. *In re Opinion of Justices* (*Supreme Judicial Court of Massachusetts,* 1925); 147 *N. E. Rep.* 680; and the state has the like power to require, by enactment, the furnishing of liability insurance prior to the issuance of a license, as a means of protecting those who use the highways. *West* v. *Asbury Park, supra;* compare *Packard* v. *Banton,* 264 *U. S.* 140; 68 *L. Ed.* 596; *Sprout* v. *South Bend,* 277 *U. S.* 163; 72 *L. Ed.* 833; *Hodge* v. *Cincinnati,* 284 *U. S.* 335; 76 *L. Ed.* 323; *Continental Baking Co.* v. *Woodring,* 286 *U. S.* 52; 76 *L. Ed.* 1155.

It is, however, argued that the prosecutor was not a judgment debtor; that it had not obtained the registration certificates by fraud, deception or imposition and therefore there was no authority or justification for the revocation of the certificates. In support of that argument great reliance is placed on the cases of *Freeman* v. *Hague,* 106 *N. J. L.* 137, and *Horwitz* v. *Jones et al.,* 12 *N. J. Mis. R.* 375; 171 *Atl. Rep.* 552. A reading of these cases disclose that they are without application here. They merely hold, in substance, that where one has obtained a building permit and on the faith thereof has changed his position by the expenditure of moneys, or the assumption of contractual obligations, the permit cannot be revoked unless it can be shown that it was obtained by fraud or deception. The issue in the instant case is simply whether the commissioner of motor vehicles was legally justified, on the proofs before him, of revoking prosecutor's registration certificates because it had not been made to appear to his satisfaction that the transfers in question were *bona fide* sales.

In support of the contention that prosecutor was not a judgment debtor and thus not amenable to the act there is invoked the doctrine of corporate entity.

While it is a fact that in the case of *White* v. *Evans,* 115 *N. J. Eq.* 177; 174 *Atl. Rep.* 731, the Court of Errors and Appeals, by Mr. Justice Parker, held, among other things, and in support thereof cited *Jennings* v. *Studebaker Sales Corp.,* 112 *N. J. L.* 399; 170 *Atl. Rep.* 626; *Jackson* v. *Hooper,* 76 *N. J. Eq.* 592; 75 *Atl. Rep.* 568; 27 *L. R. A.*

(*N. S.*) 658, that a corporation is not an individual even if the individual owned all of the stock of the corporation, nevertheless, it is also a fact that the doctrine of corporate entity is not permitted, by the courts, to stand in the way of defeating fraud.

In the case of *J. J. McCaskill Co.* v. *United States,* 216 *U. S.* 504, 516; 54 *L. Ed.* 590, it was held (at *p.* 596):

"Undoubtedly a corporation is, in law, a person or entity distinct from its stockholders and officers. It may have an interest distinct from theirs. Their interests, it may be conceived, may be adverse to its interest, and hence has arisen against the presumption that their knowledge is its knowledge, the counter-presumption that, in transactions with it, when their interest is adverse, their knowledge will not be attributed to it. But while this presumption should be enforced to protect the corporation, it should not be carried so far as to enable the corporation to become a means of fraud or a means to evade its responsibilities. *A growing tendency is therefore exhibited in the courts to look beyond the corporate form to the purpose of it, and to the officers* who are identified with that purpose. Illustrations are given of this in *Cook on Corporations, chs.* 663, 664, 727. The principle was enforced in this court in *Simmons Creek Coal Co.* v. *Doran,* 142 *U. S.* 417; 35 *L. Ed.* 1063; 12 *Sup. Ct. Rep.* 239." (Italics ours.)

In the case of *O'Donnell* v. *Herring, Hall-Marvin Safe Co.,* 208 *U. S.* 267; 52 *L. Ed.* 481, the late, venerable and distinguished jurist, Mr. Justice Holmes, on the question whether the corporation was organized as a cloak, said: "* * * *under such circumstances, a court ought to look through the corporation to the men behind it.*" (Italics ours.)

In our own state, as far back as 1892, Chancellor Magie, in *Stockton* v. *Central Railroad Co.,* 50 *N. J. Eq.* 52, expressed himself in no uncertain terms concerning this legal entity doctrine as applied to corporations. On pages 74 and 75 of the opinion he said:

"* * * In the face of such a situation it is idle to say

that the Port Reading Railroad Company is not in all things, save in its intangible and unsubstantial corporate entity, the Philadelphia and Reading Railroad Company. It is only necessary to state these particulars to satisfy the mind of the justice of this conclusion. Says Mr. Morawetz in his work on corporations, chapter 227: 'The statement that a corporation is an artificial entity apart from its members is merely a description in figurative language of a corporation viewed as a collective body. A corporation is really an association of persons, and no judicial *dictum* or legislative enactment can alter this fact.' "

" 'It is a certain rule,' said Lord Mansfield in *Johnson* v. *Smith*, 2 *Burr*. 962, 'that a fiction of law shall never be contradicted so as to defeat the end for which it was invented, but for every other purpose it may be contradicted.' "

And on page 76 he said:

"It must not be thought that courts are powerless to strip off disguises that are designed to thwart the purposes of the law. The mere suggestion of such a condition is an insult to the intelligence of the judiciary. Whenever such disguises are made apparent they can readily be disrobed. The difficulty is in showing the disguises, not in penetrating them when they appear. *Attorney-General* v. *The Great Northern Railway Co., supra; Pennsylvania Railroad Co.* v. *Commonwealth,* 7 *Atl. Rep.* 268; *People* v. *Chicago Gas Trust Co.,* 130 *Ill.* 268; *People* v. *North River Sugar Refining Co.,* 121 *N. Y.* 582; *State of Ohio, ex rel. Attorney-General* v. *Standard Oil Co.,* 30 *N. E. Rep.* 279."

Were the transfers *bona fide* sales? The term *"bona fide"* simply means in "good faith;" "honestly;" "without fraud or fair dealing;" "good faith, honesty, as distinguished from *mala fides*." What were the proper and legal proofs (*Fries* v. *Nagel Packing Co.,* 110 *N. J. L.* 588; 168 *Atl. Rep.* 307), the legitimate and rational inferences that were open to the commissioner to draw from these proofs on the issue before him?

The uncontroverted proofs were as follows: The certification of the unpaid judgment; the certificate of incorpora-

tion of the prosecutor, which disclosed that the incorporators and judgment debtors were one and the same persons; that the name chosen for the corporation and the firm name of the co-partners were practically identical, the former being Garford Trucking, Incorporated, and the latter being Garford Trucking Company; that the incorporation followed the accident and that some of the transfers were subsequent to the date of the accident and some were subsequent to the date of the judgment. The prosecutor remained mute, as to proofs.

Bearing in mind that the sole issue before the deputy commissioner was whether prosecutor's registration certificates should be revoked, it is quite obvious, that, incidental to that determination, it became necessary, in the instant case, for him to determine whether the same individuals were in possession and use of the very same vehicles, the registration of which had already been suspended; or, in other words, it became a necessary corollary, requiring decision, whether the persons, who were not entitled to the licenses, had by the transfers of the bills of sale for these same vehicles, to the corporation, obtained them under the guise of a different name. We are clearly of the opinion that the uncontroverted proofs herein fully justifies and supports the result reached by the deputy commissioner in the premises. And we so hold.

But it is now said that the act is invalid because it does not specify a mode of procedure for making it appear to the commissioner's satisfaction that the transfers were not *bona fide* sales.

It is well settled that a license to operate a motor vehicle is a mere privilege; it is in no sense a contract or property right. *Hendricks* v. *Maryland, supra.* And thus it has been held that a revocation of such a license, even without notice, does not deprive the licensee of his property without due process of law or otherwise, so long as the licensee is given the right of appeal or review of the revocation.

In the case of *LaPlante* v. *State Board of Public Roads,* 131 *Atl. Rep.* 641, the Supreme Court of Rhode Island, on

the construction of a substantially similar statute, held (at *p.* 643) :

"\* \* \* A license to operate an automobile is merely a privilege." *Huddy on Automobiles* (7th ed.) 8. *Babbitt, Law Applied to Motor Vehicles* (3d ed.) § 233, contains the following statement:

"'A license being "neither a contract nor a right of property within the legal and constitutional meaning of those terms," is no more than a temporary permit to do that which would otherwise be unlawful \* \* \* hence, the authority, which granted a license always retains the power to revoke it, either for due cause of forfeiture, or upon a change of policy and legislation in regard to the subject. And such revocation cannot be pronounced unconstitutional, either as an impairment of contract obligations, or as unlawfully divesting persons of their property rights.'

"In *Burgess* v. *Board of Aldermen,* 235 *Mass.* (at *p.* 100) ; 126 *N. E. Rep.* 459, Rugg, C. J., in upholding the revocation without a hearing, of a license to operate a jitney bus, said:

"'A license such as those here in question is a mere privilege or permission and in no sense a contract or property.'

"See, also, *Child* v. *Demus, supra; People* v. *Department of Health,* 189 *N. Y.* 187; 82 *N. E. Rep.* 187; 13 *L. R. A.* (*N. S.*) 894; 37 *C. J.* 168; 17 *R. C. L.* 554.

"The license not being property, the suspension does not deprive the licensee of his property without due process of law or otherwise."

In *Grobholz* v. *Merdel Mortgage Investment Co.,* 115 *N. J. Eq.* 411 (at *p.* 415), the Court of Errors and Appeals held that "due process of law" means "equality in the determination of the rights of those affected." That prerequisite surely exists here. The prosecutor, as evidenced by this very case, is given the right of review, by *certiorari,* of the determination made by the commissioner in the premises and this is so whether it participated at the hearing before the commissioner or not. Section 11, *Certiorari* act (1 *Comp. Stat.* 1709-1910) *p.* 405.

Moreover, in the instant case the prosecutor received due notice of the time and place of the hearing to be conducted by the commissioner. In fact, to the extent indicated, participated thereat.

We are of the further opinion that the *quasi*-judicial powers exercised by the deputy commissioner, in order to give force and effect to the provisions of the act, were exercised by him merely as incidents to the performance of his ministerial powers. In the case of *Klafter* v. *State Board of Examiners of Architects* (*Supreme Court of Illinois*), 102 *N. E. Rep.* 193 (at *p.* 195), it is held:

"* * * Judicial power does not apply to cases where judgment is exercised as incident to the execution of ministerial power. *Owners of Land* v. *People*, 113 *Ill.* 296. The granting or revocation of a license by a state board similar to the one here in question was held by this court in *People* v. *Apfelbaum, supra,* not to be in the exercise of judicial power, as that term is understood in reference to the distribution of the powers of government. See, to the same effect, among many other authorities: *People* v. *Board of Dental Examiners,* 110 *Ill.* 180; *State* v. *State Medical Examining Board, supra; Kettles* v. *People,* 221 *Ill.* 221; 77 *N. E. Rep.* 472; *Douglas* v. *People,* 225 *Ill.* 536; 80 *N. E. Rep.* 341; 8 *L. R. A.* (*N. S.*) 1116; 116 *Am. St. Rep.* 162; *City of Aurora* v. *Schoeberlein,* 230 *Ill.* 496; 82 *N. E. Rep.* 860; *People* v. *City of Chicago,* 234 *Ill.* 416; 84 *N. E. Rep.* 1044; *Meffert* v. *Packer, supra; Kennedy* v. *State Board,* 145 *Mich.* 241; 108 *N. W. Rep.* 730; 9 *Ann. Cas.* 125; *State* v. *Goodier,* 195 *Mo.* 551; 93 *S. W. Rep.* 928; *People* v. *Hasbrouck,* 11 *Utah* 291; 39 *Pac. Rep.* 918; *Spurgeon* v. *Rhodes,* 167 *Ind.* 1; 78 *N. E. Rep.* 228; *Bradley* v. *City of Richmond,* 227 *U. S.* 477; 33 *Sup. Ct.* 318; 57 *L. Ed.* 603."

Nor does the fact that the granting or revocation of a license, under the act, is committed to an administrative officer, who may be authorized to exercise his discretion in so doing, violate any constitutional guaranty. If for good cause, the administrative official is satisfied that the license should be revoked he may, upon proper proofs, do so. *Gund-*

*ling* v. *Chicago,* 177 *U. S.* 183; 44 *L. Ed.* 725 (vesting power in a mayor to determine whether applicant to sell cigarettes has good character and reputation); *Hall* v. *Geiger Jones Co.,* 242 *U. S.* 539; 61 *L. Ed.* 491 (commissioner given the right to revoke a license to sell stock if licensee is (a) of bad repute; (b) has violated any provision of the act; or (c) has engaged, or is about to engage, under favor of such license, in illegitimate business or fraudulent transactions). Prosecutor has the right of appeal or review.

We therefore conclude that chapter 116 (*Pamph. L.* 1929, *p.* 195), amended by chapter 169 (*Pamph. L.* 1931, *p.* 334—Financial Responsibility act), is not repugnant to either the state or federal constitution. It bears a direct relationship to the public safety; it is a fair and reasonable regulatory measure, under the police power of the state, and is constitutional.

Writ is dismissed, with costs.