NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1982-14T4

RACEWAY REALTY, LLC and
RACEWAY PETROLEUM, INC.,

 Plaintiffs-Respondents/
 Cross-Appellants,

v.

JOHN PAFTINOS, CHRISTINA
PAFTINOS, PETER PAFTINOS,
PETER CAMAMIS and 1501 NEW
JERSEY STATE HIGHWAY
ONE, LLC,

 Defendants-Appellants/
 Cross-Respondents.
_______________________________

 Submitted March 30, 2017 – Decided August 15, 2017

 Before Judges Lihotz, Hoffman and Whipple.

 On appeal from Superior Court of New Jersey,
 Law Division, Middlesex County, Docket No.
 L-7896-10.

 Paul J. Sica, attorney for appellants/cross-
 respondents.

 Mauro, Savo, Camerino, Grant & Schalk, P.A.,
 attorneys for respondents/cross-appellants
 (Michael P. O'Grodnick, on the brief).

PER CURIAM
 Defendants John Paftinos, Christina Paftinos, Peter Paftinos,

Peter Camamis, and 1501 New Jersey State Highway One, LLC, appeal

from a series of Law Division orders: (1) a January 26, 2012 order

entering default judgment in favor of plaintiffs Raceway Realty

(Realty) and Raceway Petroleum, Inc. (Petroleum) and ordering

conveyance of real property to Realty; (2) an April 4, 2012 order

denying, in part, defendants' motion for reconsideration; (3) an

August 21, 2014 order fixing the value of the transferred realty;

(4) a November 17, 2014 order awarding counsel fees and costs to

plaintiffs; and (5) a November 17, 2014 final judgment. Defendants

raise numerous arguments attacking the final judgment, which

extinguished their rights in the real property, as well as awarded

counsel fees and costs to plaintiffs. Plaintiffs cross-appeal,

asserting the trial judge erred in conducting a proof hearing on

the value of the real property.

 For the reasons discussed in our opinion, we affirm the final

judgment fixing liability and foreclosing defendants' interest in

the real property, which has been transferred to Realty. The

challenges set forth in the cross-appeal are also rejected.

However, we reverse the provision of the final judgment awarding

counsel fees and costs to plaintiffs, concluding the application

is flawed and the trial judge failed to state adequate findings

 2 A-1982-14T4
underpinning the award. On this issue, we remand for further

proceedings.

 I.

 The center of this dispute is the parties' respective

interests in real property located on Route 1 South in Edison (the

Edison property). Defendants John and Christina Paftinos acquired

the property in 1977, which they leased to plaintiff, Realty,

sometime in 2002, pursuant to a written lease agreement.

Subsequently, the parties executed a written rider to the lease,

the terms of which superseded the prior agreement. The rider

states Realty, as "Tenant," would use the property to operate a

fuel filling station, which involved three islands with fuel

dispensers, four underground fuel storage tanks, an office, and

other improvements.

 The rider also fixed the rights and obligations between the

parties for the initial five-year term, and for five renewal terms,

each of which was for five years. The rider fixed the monthly

rent for each renewal term, increased by twelve percent for the

second and third renewal terms, and by fifteen percent for the

fourth and fifth renewal terms. At the conclusion of the lease,

the rider extended the option to John and Christina as "Landlord"

to purchase the underground storage tanks and piping systems for

one dollar, or to require Realty to remove them at its expense.

 3 A-1982-14T4
 Central to the issues on appeal is a provision at paragraph

thirty-two, entitled "First Right of Refusal" (paragraph 32),

which stated:

 If, at any time during the original Term of
 the Lease, or any extensions thereof, or any
 tenancy thereafter, the Landlord receives a
 bona-fide offer acceptable to Landlord to
 purchase the Demised Premises, then Landlord
 shall give Tenant notice, setting forth the
 name and address of the purchaser and the
 terms and price of the offer. Tenant shall
 have thereupon the right to purchase the
 Landlord's interest covered by such an offer,
 at the price and terms of such offer, provided
 that Tenant shall have exercised such option
 by giving landlord notice by Certified or
 Registered Mail, Return Receipt Requested, to
 that effect, within thirty (30) calend[a]r
 days after the Tenant's receipt of Landlord's
 notice of said offer to purchase, and upon
 such notice of the bona-fide offer on which
 the first refusal option has been exercised.
 It being understood and agreed by the parties
 hereto, however, that in the event that Tenant
 does not give notice of its intention to
 exercise such first refusal option to purchase
 within said period, this Lease, and all its
 terms and conditions, shall nevertheless
 remain in full force and effect and Landlord
 and any purchaser or purchasers of the Demised
 Premises shall be bound thereby.

 The above notwithstanding, Landlord and
 Tenant agree that Tenant's First Right of
 Refusal shall not apply to any intra family
 transactions or to any transaction that
 involves companies affiliated with John and
 Christina Paftinos.

 On June 2, 2003, John and Realty entered into a separate

transaction. John executed a promissory note to secure a $75,000

 4 A-1982-14T4
loan from Realty, which was payable in full on July 2, 2003. The

document stated if full repayment did not occur on that date,

Realty would receive a credit, amounting to one-half the monthly

rental cost for the property, applied to the rent due for July

2003. Further, if the loan was not repaid in full on July 31,

2003, Realty would receive a credit for all rent due from August

2003 through March 2004. At that point, credited amounts would

constitute full repayment of John's loan.

 On September 8, 2003, John and defendant Peter Paftinos

executed commercial loan documents with New Millennium Bank (the

Bank) to obtain $800,000. Loan repayment was by monthly

installments over ten years. As security for the loan, the Bank

required a first mortgage on the Edison property, then appraised

for approximately $1.3 million, and an assignment of the lease

with Realty. John and Christina executed a mortgage on the Edison

property, assigned the lease and pledged the rents from Realty.

Peter's personal guarantee afforded the Bank additional security.

 The loan agreement prohibited the pledge of the Edison

property as collateral for other loans, and prohibited the Bank

from assigning the loan. The terms further required the loan

would become due and payable in full, if the Edison property was

"sold."

 5 A-1982-14T4
 On February 28, 2005, John and Christina executed a $350,000

promissory note to Petroleum, a company affiliated with Realty. 1

The interest-free loan demanded payment in full by May 27, 2005.

However, if unpaid on that date, Realty would be relieved of its

monthly rental obligations from June 2005 through May 2010.

 The same day, John and Christina agreed to reduce Realty's

rent for the base term and first renewal period; thereafter with

each renewal, rent would increase eight percent. On June 8, 2005,

Petroleum informed John and Christina they failed to pay the

$350,000 loan when due, and noted the stated credits would commence

in lieu of Realty's rent payments.

 On November 7, 2005, the Bank notified Realty that John and

Christina defaulted on the loan so that all rental payments must

be forwarded to the Bank pursuant to the assignment of the lease.

On November 9, 2005, Realty informed the Bank no rent was due,

pursuant to the terms of the rider. On October 15, 2007, Realty

exercised its first five-year lease renewal, which began on June

15, 2008.

 The Bank commenced foreclosure proceedings, aimed at securing

Sherriff's sale of the Edison property to satisfy the debt, then

1
 According to the Law Division complaint, Raceway Petroleum
owned and operated the business entity on the Edison property
leased by Realty as tenant.

 6 A-1982-14T4
totaling $776,031.47. While the case was pending, the Bank sold

John and Peter's loan to defendant Peter Camamis for $680,000.2

Camamis continued the foreclosure action as the designated

plaintiff.

 John and Peter negotiated with Camamis. A March 3, 2010

agreement executed by John, Christina and Peter set forth the

intent to transfer the Edison property to a limited liability

company known as Paftinos Camamis LLC. The agreement identified

Camamis as the managing member and stated he would own no less

than 51% of the LLC. Defendant 1501 LLC (1501) was formed to hold

title to the Edison property. Further, John and Christina agreed

to repay Camamis by December 31, 2010, and if they failed to do

so, consented to transfer their interest in 1501 to Camamis. On

June 23, 2010, John and Christina transferred the property's title

to 1501 for one dollar, which properly recorded the deed.

 John and Peter executed a second agreement with Camamis on

March 3, 2010. The agreement referenced John and Peter's June 28,

2007 guaranty of a $2,800,000 debt secured by two parcels of real

estate other than the Edison property. The preamble of the

agreement names two LLCs, owned by John and Peter, as mortgagors,

2
 Nicholas Kambitsis, a principal in both Realty and Petroleum,
testified the Bank inquired whether he wished to purchase John and
Peter's note. He offered $500,000 or $550,000, which the Bank
declined.

 7 A-1982-14T4
and the named mortgagee as BMR Funding. The body of the note

directs repayment of the debt due to Camamis and suggests security

for repayment was John and Peter's stock in the mortgagor LLCs.3

Camamis then dismissed the foreclosure action.

 Realty was directed to remit rental payments to 1501. Realty

declined and instead sent all rent payments to its attorney, who

placed it into an attorney trust account. 1501 filed a summary

dispossession complaint to obtain the outstanding rent due. On

October 29, 2010, Realty filed a fourteen-count Law Division

complaint, alleging contract and tort claims, which included the

alleged fraudulent transfer of the Edison property, in violation

of paragraph 32 of the rider. The landlord-tenant action was

transferred to the Law Division and consolidated with Realty's

action.

 The Law Division judge enjoined defendants from transferring

the Edison property, pending further proceedings, and ordered

certain expedited discovery. 1501, Peter, John, and Christina

never responded to Realty's complaint and default was entered.

 The procedures that followed are muddled. Defendants moved

to vacate default. Realty cross-moved for final judgment and

3
 The record does not explain the nature or purpose of this
debt. Further, there is no information explaining its
relationship, if any, to the first agreement between Camamis, John
and Peter.

 8 A-1982-14T4
sanctions. Two orders were filed on February 18, 2011: one stated

Camamis and 1501's requests to vacate default were moot, as an

answer on their behalf was filed; the second denied Realty's cross-

motion for sanctions and for final judgment against defendants,

but mandated discovery be produced within ten days.

 An answer and counterclaim on behalf of all defendants was

submitted, and plaintiffs filed an answer to the counterclaim.

Additional motion practice resulted in orders similar to those

entered in February, including an order awarding counsel fees to

plaintiffs because defendants failed to comply with the ordered

discovery. Apparently, defendants' answer and counterclaim were

rejected by the clerk's office, based on the entry of default.

 On notice to defendants, plaintiffs moved for default

judgment.4 John and Christina opposed the motion. Camamis and

1501 filed an untimely cross-motion to vacate default and to extend

the discovery end date.

 Following argument, final default judgment against Camamis

and 1501 was entered on January 26, 2012. The Edison property was

ordered transferred to Realty for $680,000, less the amount of the

realty transfer tax. The Bank's mortgage, assigned to Camamis,

was ordered discharged, and Camamis and 1501 were directed to

4
 The notice of motion mistakenly recites the return date as
January 6, 2011, which should be January 6, 2012.

 9 A-1982-14T4
execute all necessary documents to facilitate the transfer.

Finally, attorney's fees and costs of $82,141.95 were awarded to

plaintiffs, to be deducted from the stated payment due Camamis.

Two orders, dated February 3, 2012, denied Camamis' and 1501's

motions to vacate default without prejudice.

 A deed and related documents, transferring the Edison

property from 1501, appear to have been executed on February 7,

2012. Camamis and 1501 subsequently moved for reconsideration of

the final judgment, challenged the determined fair market value

of the Edison property, and requested transfer be stayed. John

and Christina joined in the motion. In an April 4, 2012 written

opinion, the judge partially granted reconsideration, temporarily

stayed the transfer, and ordered limited discovery and a proof

hearing on the value of the Edison property. In an April 4, 2012

written opinion, reconsideration was granted, in part. Camamis

and 1501's motion to reconsider that order was denied.

 Motion practice continued and for reasons unclear from the

record, the matter was assigned to a different judge. Ultimately,

following a three-day proof hearing, an order was entered

concluding the fair market value of the Edison property was

$1,105,130.57, as of January 24, 2012. Cross-motions by the

parties for fee awards for the proof hearing were denied.

Plaintiffs were awarded fees for successfully opposing the motion

 10 A-1982-14T4
to vacate the default judgment, in the amount of $55,052. Final

judgment was filed on November 17, 2014. The trial judge stayed

transfer of the realty pending appeal.

 II.

 On appeal, defendants maintain the certification filed by

plaintiffs' counsel to support entry of default judgment was

inaccurate and misleading. Defendants state the recitation of

paragraph 32 omitted language allowing transfers to "intra family

transactions" or transfers to "companies affiliated with John and

Christina Paftinos." Further, there was no mention of paragraph

30, which subordinates the lease "to all mortgages and other

security interests which may now or hereafter affect this Lease

or the Premises." Defendant identifies additional paragraphs in

the certification, suggesting the transfer of title to 1501 was

permitted as was the mortgage loan to the Bank. Also, defendants

argue counsel's certification failed to acknowledge John and

Christina could redeem title to the Edison property by paying

Camamis before December 31, 2010. Characterizing the agreement

with Camamis as a "forbearance agreement," they state the November

2010 injunction "froze the state of title" and prevented them from

doing so. Finally, defendants suggest 1501 was an allowed

affiliated company of Christina and John. We reject these

 11 A-1982-14T4
assertions and note we need not review any other factual challenges

recited by Camamis and 1501. R. 2:11-3(e)(1)(E).

 Although defendants' arguments limit focus to statements in

counsel's certification, it is important to consider other

documents attached, including documents regarding the transaction

between Realty and John and Christina, the loan and mortgage

documents between John and Christina and the Bank, their agreements

with Camamis, and the deed transferring the Edison property to

1501.

 The motion to enter default judgment was opposed by John and

Christina, who emphasized their partial ownership of 1501.

Approximately two days before the return date, Camamis and 1501

filed opposition and a cross-motion to vacate default, which the

court declined to consider.

 Other discovery regarding details of Camamis' assignment from

the bank and the arrangement with John and Christina, and John and

Peter, were ordered disclosed early in the litigation to clarify

the nature of these transactions. However, defendants' conduct,

later characterized as "egregious, willful and deliberate"

violations of the judge's unambiguous orders for expedited

discovery, limited the available record reviewed by the court.

Camamis and 1501 cannot now protest material facts were not

 12 A-1982-14T4
considered, as they controlled this information, which they chose

not to provide.

 "On appellate review, the trial judge's determination 'will

be left undisturbed unless it represents a clear abuse of

discretion.'" DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 261

(2009) (quoting Hous. Auth. of Morristown v. Little, 135 N.J. 274,

283 (1994)). "[A]n abuse of discretion results where the 'decision

[was] made without a rational explanation, inexplicably departed

from established policies, or rested on an impermissible basis.'"

United States, ex rel U.S. Dept. of Agric. v. Scurry, 193 N.J.

492, 504 (2008) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J.

561, 571 (2002)).

 The interpretation of a contract "is a matter of law for the

court subject to de novo review." Fastenberg v. Prudential Ins.

Co., 309 N.J. Super. 415, 420 (App. Div. 1998). Contract terms

must be given their "plain and ordinary" meaning. Nester v.

O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997).

 In this case, the rider includes a single event as triggering

paragraph 32: the proffer of "a bona-fide offer" to purchase the

Edison property. A transfer, exempt from this trigger, is one to

entities "affiliated with John and Christina." The terms of the

agreement reflect the fundamental intent to allow and assure

plaintiffs' business is secure by eliminating third parties, other

 13 A-1982-14T4
than Christina and John, to be granted an opportunity to purchase

the property, without plaintiffs' right to match the offer.

 Defendants' attempt to highlight discrete events rather than

viewing the matter as a whole is rejected. John and Christina's

transactions with Camamis, coupled with the transfer of the Edison

property to 1501, eliminated plaintiffs' rights under paragraph

32 because on January 1, 2011, Camamis became the sole holder of

100% interest in 1501. On that date, John and Christina had no

interest in 1501.

 The judge's January 26, 2012 written opinion succinctly

reflects consideration of information submitted to the court. We

flatly reject Camamis and 1501's suggestion the trial judge entered

the order without consideration of numerous documents evincing the

various transactions. R. 2:11-3(e)(1)(E).

 Further, the judge noted Camamis and 1501 did not provide

discovery within ten days of the August 19, 2011 order, and

thereafter never satisfied the condition precedent for leave to

file their untimely answer. The judge found the procedural

requirements of Rule 4:43-1 for entry of a default judgment were

properly satisfied and the repeated failure to provide discovery

prejudiced plaintiffs. He found John and Christina breached

paragraph 32 by transferring the Edison property to 1501, whose

majority shareholder was Camamis. Thereafter, John and

 14 A-1982-14T4
Christina's failure to satisfy Camamis' debt resulted in his 100%

ownership of 1501. Viewing the entire record, we find no abuse

of discretion in the entry of the default judgment.

 We also find unavailing defendants' claim the default

judgment effectively divested non-defaulting defendants, John and

Christina, of ownership of the property. The record shows

otherwise.

 John and Christina pledged their interest to secure the Bank's

debt then transferred legal title of the Edison property to 1501.

John and Christina also made no effort to pay the debt to Camamis

or to redeem the property. Thus, Camamis became the owner of

1501, which held title to the Edison realty. As noted, the

transfer was a breach of the rider with Realty.

 The arguments presented in Point II of the merits brief are

directed to the transaction between Camamis and John and Christina,

and Camamis with John and Peter. None of these matters were

presented to the trial court and will not be addressed. Zaman v.

Felton, 219 N.J. 199, 226-27 (2014) (citing Nieder v. Royal Indem.

Ins. Co., 62 N.J. 229, 234 (1973)).

 We also reject as meritless the argument stating John and

Christina's deed to 1501 did not transfer ownership of the property

to the corporate entity. "Ownership of real property is

transferred by deed." Dautel Builders v. Borough of Franklin, 11

 15 A-1982-14T4
N.J. Tax 353, 357 (Tax Ct. 1990) (citing N.J.S.A. 46:3-13). "The

transfer is complete upon execution and delivery of the deed by

the grantor and acceptance of the deed by the grantee." Ibid.

(citing In re Lillis' Estate, 123 N.J. Super. 280, 285 (App. Div.

1973)). There is no evidence to support the notion John and

Christina "did not transfer full ownership to" 1501 as of January

1, 2011, when John and Christina automatically lost all beneficial

interest in 1501, by operation of the March 3, 2010 agreements.

We reject this claim as well as other factual assertions advanced

challenging the determination of liability for breach of paragraph

32 of the rider. R. 2:11-3(e)(1)(E).

 Next, defendants suggest default judgment must be set aside

because the judge failed to fulfill his obligation under Rule 1:7-

4. Again, the argument is premised on defendant's assertion the

transfer of the Edison property by John and Christina was to an

affiliated company and paragraph 32 was not breached. As we have

stated, the intention of the unambiguous language of paragraph 32,

was to preserve plaintiffs' interest in maintaining the realty on

which its business was established by granting it the right to

match any bona fide offer for sale. The transfer of the realty

to 1501 gave Camamis an immediate 51% interest in the Edison

property — a circumstance which flies in the face of the expressed

intent of the rider. John and Christina's failure to perform gave

 16 A-1982-14T4
Camamis 100% ownership of the realty, which unquestionably

breached paragraph 32.

 We remain unpersuaded by the assertions discovery failures

were the fault of prior counsel. The trial judge was extremely

tolerant and gave Camamis and 1501 numerous opportunities to

satisfy the discovery obligation, as recounted by the judge in his

January 26, 2012 opinion. The discovery failures were the subject

of several motions and orders, well documented in this record,

which made plain defendants' failure to comply would result in the

dismissal of their pleadings and defenses.

 On April 4, 2012, Camamis' current counsel could not

demonstrate compliance with the orders. Also, in denying

reconsideration on June 22, 2012, the judge rejected Camamis'

position he bore no responsibility by claiming he was unaware of

the discovery failures. The judge stated: "Noticeably absent is

any certification from [d]efendant Camamis that he was unaware

that discovery was outstanding or the seriousness of the situation.

In fact, Mr. Camamis was in court on multiple occasions during

oral arguments and was addressed directly by the Court." These

reasons supported the conclusion this case is "one of the rare

situations" in which "the ultimate sanction of dismissal" was

warranted.

 17 A-1982-14T4
 "While a trial judge has wide discretion in deciding the

appropriate sanction for a breach of discovery rules, the sanction

must be just and reasonable." Mauro v. Owens-Corning Fiberglas

Corp., 225 N.J. Super. 196, 206 (App. Div. 1988), aff'd, 116 N.J.

126 (1989). Certainly such relief should be used sparingly; yet

"a party invites this extreme sanction by deliberately pursuing a

course that thwarts persistent efforts to obtain the necessary

facts." Abtrax Pharm., Inc. v. Elkins-Sinn, Inc., 139 N.J. 499,

515 (1995). The "full disclosure of all relevant evidence in

compliance with the discovery rules" is a "bedrock principle," and

when parties transgress it, they "should not assume that the right

to an adjudication on the merits of its claims will survive so

blatant an infraction." Id. at 521.

 On this issue, we reject the contention the trial judge abused

his discretion. We defer to the detailed factual findings by the

trial judge, who repeatedly addressed the matter in motion

practice, as they are supported by "adequate, substantial, and

credible evidence" in the record.

 Next, we reject as lacking merit the assertion the judgment

was interlocutory. The judge properly considered whether to vacate

the final default judgment against the standards of Rule 4:50-1.

When a default judgment has been entered pursuant to Rule 4:43-2,

Rule 4:50-1 "governs an applicant's motion for relief from default

 18 A-1982-14T4
when the case has proceeded to judgment." US Bank Nat'l Ass'n v.

Guillaume, 209 N.J. 449, 466 (2012). We review the trial court's

determination for an abuse of discretion. Id. at 467. Once

entered, relief from the judgment requires a defendant seeking to

reopen a default judgment show excusable neglect; that is, "the

neglect to answer was excusable under the circumstances and that

he has a meritorious defense." Morales v. Santiago, 217 N.J.

Super. 496, 501 (App. Div. 1987) (quoting Marder v. Realty Constr.

Co., 84 N.J. Super. 313, 318 (App. Div. 1964), aff'd, 43 N.J. 508

(1964)). Following our review, we find no abuse of discretion.

DEG, supra, 198 N.J. at 261.

 The final issue for review on the appeal concerns the counsel

fee award, entered in the final judgment of default. An award of

counsel fees is a decision that rests within the sound discretion

of the trial court. Packard-Bamberger & Co. v. Collier, 167 N.J.

427, 444 (2001). "[F]ee determinations by trial courts will be

disturbed only on the rarest of occasions, and then only because

of a clear abuse of discretion." Ibid. (quoting Rendine v.

Pantzer, 141 N.J. 292, 317 (1995)).

 Long adhering to the so-called American Rule, that a

prevailing party is not entitled to recovery of attorneys' fees,

New Jersey generally disfavors the shifting of fees. N. Bergen

Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 569 (1999).

 19 A-1982-14T4
Nonetheless, a prevailing party can recover attorneys' fees if

expressly provided for by contract. Packard-Bamberger, supra, 167

N.J. at 440 (citing Dep't of Envtl. Prot. v. Ventron Corp., 94

N.J. 473, 504 (1983)); cf. Satellite Gateway Commc'ns, Inc. v.

Musi Dining Car Co., 110 N.J. 280, 285 (1988) (noting although

Rule 4:42-9(a) does not include contracts within its eight

exceptions under which attorneys' fees may be awarded, fees may

be awarded by contract).

 The method for calculation of reasonable counsel fees in

contract cases is the same as that used in other counsel fee cases,

although there is no enhancement of the fee as there is under some

fee-shifting statutes. Litton Indus., Inc. v. IMO Indus., Inc.,

200 N.J. 372, 389 (2009). The requesting party must establish

that legal work performed "was causally related to securing the

relief obtained." Id. at 386 (quoting N. Bergen Rex Transp.,

supra, 158 N.J. at 570). A fee award will be "'justified if [the

party's] efforts [were] a necessary and important factor in

obtaining th[at] relief.'" Ibid. (quoting N. Bergen Rex Transp.,

supra, 158 N.J. at 570).

 In calculating the amount of reasonable attorneys' fees, "an

affidavit of services addressing the factors enumerated by RPC

1.5(a)" is required. R. 4:42-9(b). Courts then determine the

"lodestar," defined as the "number of hours reasonably expended"

 20 A-1982-14T4
by the attorney, "multiplied by a reasonable hourly rate." Litton

Indus., supra, 200 N.J. at 386 (citing Furst v. Einstein Moomjy,

Inc., 182 N.J. 1, 21 (2004)). "The court must not include

excessive and unnecessary hours spent on the case in calculating

the lodestar." Furst, supra, 182 N.J. at 22 (citing Rendine,

supra, 141 N.J. at 335-36). The court is required to make findings

on each element of the lodestar fee. Id. at 12. The fee awarded

must be "reasonable," RPC 1.5(a), and reasonableness is a

"calculation" to be made in "every case." Furst, supra, 182 N.J.

at 21-22.

 In this matter, the affidavit of counsel listed the total

fees but did not itemize the specific services provided in

connection with the request for default judgment or the matters

for which fees were appropriate.5 Defendants' challenge seeking

to limit any fee award to necessary services provided in this

action has merit.

 More important, the trial judge failed to state his findings

supporting the fee award. Not only must the judge identify the

5
 Michael O'Grodnick, counsel who appeared for plaintiffs at
the hearings (the Mauro firm), submitted a certification of
services dated December 15, 2011. He stated the firm's total fee
as $39,093.95, plus $455 and an anticipated $1060 on the motion
for final judgment of default. The fees listed for his
predecessor, who commenced the action, (the O'Halloran firm) were
$43,048, for a total request to $83,656.95. If $455 and $1060 are
excluded, the total is $82,141.95, the amount awarded.

 21 A-1982-14T4
foundation for the award, i.e., what services are compensable, but

the judge must also fix the lodestar and examine the amount of

fees sought.

 III.

 Plaintiffs' cross-appeal asserts the judge erred in granting

partial reconsideration and conducting a proof hearing to

determine the value of the Edison property. The argument suggests

when applying paragraph 32, the offer plaintiffs must accept or

reject is the $680,000 paid to the Bank. We are not persuaded.

 In granting partial reconsideration, the trial judge

recognized paragraph 32 should not operate to give Realty a

windfall; rather, it was to permit it to acquire the leasehold,

based in the contractual definition itself, which set the price

at a bona fide offer, implicating fair market value. Nevertheless,

the evidential hearing allowed plaintiff to provide proof of a

contrary expectation, which it did not meet.

 A "bona fide" offer "has consistently been equated with good

faith conduct, honesty and fair dealing." State v. Rowland, 183

N.J. Super. 558, 568 (Law Div. 1982) (citing Garford Trucking,

Inc. v. Hoffman, 114 N.J.L. 522, 530 (Sup. Ct. 1935)), overruled

on other grounds, State v. Hancock, 210 N.J. Super. 568, 569 (App.

Div. 1985). "Fair market value" is "what a willing buyer and a

willing seller would agree to, neither being under any compulsion

 22 A-1982-14T4
to act." Borough of Saddle River v. 66 East Allendale, LLC, 216

N.J. 115, 136 (2013) (quoting State v. Silver, 92 N.J. 507, 513

(1983)).

 Here, the sum Camamis paid the Bank was a distressed amount

to be relieved of the burden of the Edison property. See 125

Monitor St. LLC v. Jersey City, 21 N.J. Tax 232, 241-42 (Tax 2004)

(price received by bank in hasty sale of foreclosed property "for

what it could get" was "not a bona fide sale nor was it a true

indication of the subject property's value"), aff'd, 23 N.J. Tax

9 (App. Div. 2005). Plaintiffs were not entitled to pay only a

bargain price, but a hearing was required to determine the fair

market value of the Edison property. Plaintiffs' argument to the

contrary is summarily rejected.

 We also reject the claim the trial judge abused his discretion

in ordering a hearing, pursuant to Rule 4:43-2(b), to resolve "the

amount of damages" or assess any other matter needed "to enter

judgment or to carry it into effect." We also reject as meritless

plaintiffs' contention a default equates to an admission of all

assertions. The court remains responsible to determine whether

the evidence supports the relief requested. See Heimbach v.

Mueller, 229 N.J. Super. 17, 23-24 (App. Div. 1988) ("When a trial

court exercises its discretion to require proof of liability as a

prerequisite to entering judgment against a defendant who has

 23 A-1982-14T4
defaulted, what is required . . . is that the plaintiff adduce [a

prima facie case.]"); Kolczycki v. City of East Orange, 317 N.J.

Super. 505, 514-15 (App. Div. 1999).

 Plaintiffs also attack the valuation analysis by the judge

who conducted the three-day valuation hearing, as well as the date

she fixed for valuation. The judge issued a written opinion

analyzing the testimony presented by three appraisers.

Plaintiffs' challenges to the judge's factual findings, which in

part are based on credibility, are rejected.

 Appellate review of a trial court's factual findings is

limited. "Trial court findings are ordinarily not disturbed unless

'they are so wholly unsupportable as to result in a denial of

justice.'" Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464,

475 (1988) (quoting Rova Farms Resort v. Inv. Ins. Co., 65 N.J.

474, 483-84 (1974)). "This is especially the case when those

findings 'are substantially influenced by [the judge's]

opportunity to hear and see the witnesses and to have the "feel"

of the case, which a reviewing court cannot enjoy.'" Zaman, supra,

219 N.J. at 215-16 (quoting State v. Johnson, 42 N.J. 146, 161

(1964)).

 "Expert testimony is generally required to determine the fair

market value of real property, but the 'fact[-]finder is not bound

to accept the testimony of an expert witness,' and 'may accept

 24 A-1982-14T4
some of the expert's testimony and reject the rest.'" Pansini

Custom Design Assocs. v. City of Ocean City, 407 N.J. Super. 137,

143 (App. Div. 2009) (citations omitted). "Ultimately, the fact-

finder, here the judge, must weigh and evaluate the experts'

opinions, including their credibility, to fulfill the judge's

responsibility in reaching a reasoned, just and factually

supported conclusion." Id. at 144; accord City of At. City v.

Ginnetti, 17 N.J. Tax 354, 361-62 (Tax 1998), aff'd o.b., 18 N.J.

Tax 672 (App. Div. 2000).

 In forming their opinions, experts must state "factual

evidence," Buckelew v. Grossbard, 87 N.J. 512, 524 (1981), which

may be "facts, data, or another expert's opinion, either perceived

by or made known to the expert, at or before trial." Greenberg

v. Pryszlak, 426 N.J. Super. 591, 607 (App. Div. 2012) (quoting

Rosenberg v. Tavorath, 352 N.J. Super. 385, 401 (App. Div. 2002)).

Further, experts may rely on their "knowledge, skill, experience,

training, or education," N.J.R.E. 702, but they may not give a

"net opinion," which is one unsupported by any factual evidence

or data. Buckelew, supra, 87 N.J. at 524; Rosenberg, supra, 352

N.J. Super. at 401. The expert must give "the why and wherefore

of his expert opinion, not just a mere conclusion." Greenberg,

supra, 426 N.J. Super. at 607 (quoting Rosenberg, supra, 352 N.J.

Super. at 401). "Mere guess or conjecture is not a substitute for

 25 A-1982-14T4
legal proof," and "speculation surrounded by expertise" is still

just speculation. Pelose v. Green, 222 N.J. Super. 545, 550-51

(App. Div.), certif. denied, 111 N.J. 610 (1988).

 Here, the hearing judge rejected plaintiffs' expert as

lacking credibility, and found his evaluation had no probative

value. She noted the expert gave no justification for adjustments

applied to reduce the value of the Edison property, and stated the

expert used aged comparable sales of Realty restricting use as a

filling station. On the other hand, the judge found the expert

presented by John and Christina "was more credible." The expert

fully supported the more current comparable sales used to reach

his opinion of value and explained adjustments made and why they

were applicable, in light of the features of the Edison property.

Accordingly, we reject plaintiffs' contention, and defer to the

trial court's findings John and Christina's expert was

"substantially more persuasive and credible." See Zaman, supra,

210 N.J. at 215-16.

 The judge did not accept this expert's valuation wholesale.

Rather, she made a discerning view of various aspects of the

evaluation such as highest and best use, land value, and

improvements as depreciated. We also conclude the judge properly

stated the applicable legal principles guiding her conclusion.

"Appellate courts have long recognized that the trial court must

 26 A-1982-14T4
be granted 'a wide discretion' in determining the admissibility

of sales sought to be relied on as comparable." Ford Motor Co.

v. Edison Township, 127 N.J. 290, 307 (1991). We will not

interfere with her determination (quoting Cty. of Los Angeles v.

Faus, 312 P.2d 680, 684 (1957)).

 Finally, plaintiffs argue based on the default judgment, the

realty was transferred to 1501 in June 2010; however, the hearing

judge fixed the value of the Edison property as of the entry of

final judgment on January 2012. Plaintiff believes failure to

abide by the intention in the prior order resulted in an increased

value of the property. The claim is unsupported. In fact,

plaintiffs' expert testified the property's value had not changed

significantly from the transfer date in June 2010 to January 2012.

Testimony was not disputed there was stability in market prices

during that period because of a high vacancy rate, which precluded

the need to adjust prices of comparable sales during the same

period for the passage of time. Therefore, if an error arose from

the actual date fixed for valuation, it was harmless. R. 2:10-2.

 IV.

 In summary, we affirm the final judgment by default dated

January 26, 2012, and the orders denying to set aside the default

judgment, with the exception that we remand for further findings

regarding the attorney fee award set forth in the January 26, 2012

 27 A-1982-14T4
final judgment by default. On this issue, we remand to the trial

judge for further proceedings consistent with our opinion.

 We affirm the order granting partial reconsideration ordering

a proof hearing on the fair market value of the Edison property

and the November 17, 2014 final judgment entered following that

hearing, rejecting plaintiffs' challenges on cross-appeal. Any

issues raised by any party not specifically addressed were found

to lack sufficient merit to warrant discussion in our opinion. R.

2:11-3(e)(1)(E).

 Affirmed in part and remanded in part.

 28 A-1982-14T4