# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4982-18T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

D.S.,

     Defendant-Appellant,

and

D.St.,

     Defendant.

_____

IN THE MATTER OF THE
GUARDIANSHIP OF L.S.,

     a Minor.

_____

        Argued telephonically June 4, 2020 –
        Decided July 20, 2020

        Before Judges Alvarez and Suter.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FG-09-0209-19.

Adrienne Marie Kalosieh, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Robyn A. Veasey, Deputy Public Defender, of counsel; Adrienne Marie Kalosieh, on the briefs).

Sara M. Gregory, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Sara M. Gregory, on the brief).

Margo E.K. Hirsch, Designated Counsel, argued the cause for minor (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Meredith Alexis Pollock, Deputy Public Defender, of counsel; Margo E.K. Hirsch, on the brief).

PER CURIAM

Defendant, D.S., appeals the judgment terminating her parental rights to L.S. (Lisa), a daughter.[1] She contends the trial court erred because her sister, T.B., was not evaluated as a placement option, and because it did not address expert testimony for the defense that opposed termination. We affirm largely for reasons expressed in the trial court's comprehensive, written opinion.

---

[1] Lisa's father, D.St., did not appeal.

A-4982-18T1

## I.

Defendant is the biological parent of Lisa, who was born in October 2016. She lived with defendant after her birth. Defendant, then eighteen, was in a Division-arranged resource home under an "[i]ndependent [l]iving" program. Her drug screen was positive for marijuana after Lisa's birth, and the Division referred her for a substance abuse evaluation, counselling and parenting services. She also was to attend an adolescent service center for life skills, counseling services, job search support and housing information assistance. Defendant was not compliant with the services.

Defendant was directed to attend intensive outpatient treatment after she tested positive for THC and oxycodone. She also signed a safety protection agreement, requiring her parenting time with Lisa to be supervised at all the times.

In July 2017, defendant moved out of the independent living resource home, but she wanted Lisa to remain there. The Division applied for and was granted care, custody and supervision of Lisa so she could remain in that resource home. However, Lisa was removed from that resource home after she was found with defendant, unsupervised. Defendant identified her sister in New Jersey (M.B.) and her godmother, L. Sp., (Lana), also in New Jersey, as possible

placement resources for Lisa. M.B. could not care for the baby full time because of her work hours, but Lana agreed to, and then qualified for placement. Lisa was ten months old at that time, and has lived with Lana since then.

Defendant did not complete the services to which she was ordered that included substance abuse treatment, and vocational and parenting skills training, and was terminated from the programs. Her visitation with Lisa was inconsistent. She did not keep in contact with the Division's case worker or attend family team meetings. She was terminated from her counselling program, her stipend for independent living was stopped, she became homeless and was staying with friends.

In September 2018, the Division filed a complaint for guardianship to terminate defendant's and D.St.'s parental right pursuant to N.J.S.A. 30:4C-15. Defendant agreed to participate in services, but then did not appear for a drug screen and could not be reached to start counselling. She lost contact with the Division and did not regularly visit Lisa.

On March 8, 2019, defendant's sister from Virginia, T.B., attended a court mediation session and expressed an interest in serving as a resource for Lisa. T.B. visited with Lisa as she had done a few times since her birth. Within three

weeks, the Division forwarded an Interstate Compact on the Placement of Children application to Virginia for T.B.

The trial court terminated defendant's and D.St.'s parental rights to Lisa on June 26, 2019, following a bench trial. In its written decision, the court noted defendant acknowledged she was not ready to parent Lisa, and sought more time to stabilize. Despite services, she had not taken the steps in the two years the child had been in placement to obtain housing, employment or to address the problems that prevented reunification. Although none of the "obstacles to reunification [were] insurmountable," defendant was either unwilling or unable to mitigate these harms. It was defendant who had not complied with the services provided.

The court found the Division made reasonable efforts to provide services tailored to her needs and explored alternatives to termination. The court was not convinced her "recent activity" would continue into the future.

Under prong three, the court found the Division "exercised reasonable efforts to explore relative resource placements proposed by [defendant]." The child's placement with Lana, her godmother, was at defendant's suggestion. The Division was not aware of T.B. as a possible caretaker until the eve of trial because defendant did not want Lisa to reside in Virginia. The trial court noted

"all parties agreed, [T.B.] would qualify as an ideal placement for L.S.," but the Division was not aware of her. Lisa was bonded with Lana and would be harmed by severing that bond, and placing her with T.B., who had minimal contact and no bond with Lisa.

The trial court found Dr. Karen Wells' testimony to be "credible and persuasive," that termination would not do more harm than good and that Lana could mitigate any harm caused by terminating defendant's rights. Both Dr. Wells and defendant's expert, Dr. Andrew Brown, III, agreed the child was bonded with Lana. Dr. Wells' opined Lana was the child's psychological parent. She also was likely to maintain contact between defendant and the child. The court found termination would not do more harm than good.

On appeal, defendant raises these issues:

> I. REVERSAL OF THE FAMILY PART'S JUDGMENT AND REMAND TO CONSIDER PLACEMENT WITH T.B. FOR THE PURPOSE OF KINSHIP LEGAL GUARDIANSHIP IS REQUIRED AS A MATTER OF LAW AND IN THE BEST INTERSTS OF [LISA].
>
> > A. THE COURT ERRED IN HOLDING THAT DCPP MET ITS BURDEN AS TO PRONG THREE BECAUSE IT FAILED TO ASSESS T.B. AS A POTENTIAL CARETAKER.

1. The court erred in its presumption that DCPP could not have evaluated T.B. because it was "completely unaware of [T.B.] as a possible placement" until March 2019.

2. DCPP's obligation to [Lisa] to explore her aunt existed regardless of whether [defendant] initially recommended T.B. for placement.

B. THE COURT ERRED IN HOLDING THAT DCPP MET ITS BURDEN AS TO PRONG FOUR BECAUSE DCPP CANNOT BE FOUND TO HAVE PRESENTED CONVINCING EVIDENCE THAT TERMINATION WOULD NOT DO MORE HARM THAN GOOD WHERE IT FAILED TO ASSESS T.B. AS A POTENTIAL CARETAKER.

II. THE COURT ERRED IN HOLDING THAT DCPP MET PRONGS TWO, THREE, AND FOUR WITHOUT DISCUSSING OR ANALYZING [DEFENDANT'S] EXPERT EVIDENCE THAT [DEFENDANT] IS [LISA'S] CENTRAL ATTACHMENT FIGURE AND THAT [LISA'S] BOND WITH [LANA] COULD BE REPLACED BY ANY ADEQUATE CARETAKER, INCLUDING T.B.

A. THE JUDGMENT CANNOT BE AFFIRMED BECAUSE THE COURT DID NOT DISCUSS THE COUNTER EVIDENCE BY DR. BROWN REFUTING DCPP'S EXPERT.

B. THE JUDGMENT CANNOT BE AFFIRMED BECAUSE THE COURT'S

7

ANALYSIS OF PRONGS TWO, THREE, AND FOUR ARE UNDERMINED BY DR. BROWN'S TESTIMONY AND REPORT.

II.

To terminate parental rights, N.J.S.A. 30:4C-15.1(a) requires that the Division prove by clear and convincing evidence the following four prongs:

> (1) The child's safety, health, or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm . . . . ;
>
> (3) The [D]ivision has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.

A trial court's decision to terminate parental rights is subject to limited appellate review. N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007); see Cesare v. Cesare, 154 N.J. 394, 413 (1998) ("Because of the family courts' special . . . expertise in family matters, appellate courts should accord

deference to family court factfinding.").  The family court's decision to terminate parental rights will not be disturbed "when there is substantial credible evidence in the record to support the court's findings."  N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008).

We have carefully examined the record in light of the arguments posed, concluding the trial court's findings were supported by substantial credible evidence on the record as a whole.  We defer to those findings.  See N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448-49 (2012).  We affirm substantially for the reasons set forth by the trial court in its written decision, adding these comments.

Defendant did not challenge the trial court's finding under prong one that Lisa's "safety, health, or development has been or will continue to be endangered by" her parental relationship with defendant.  As such, that prong of the best interest test was met.  See Drinker Biddle & Reath, LLP v. N.J. Dep't of Law & Pub. Safety, Div. of Law, 421 N.J. Super. 489, 496 n.5 (App. Div. 2011) (noting claims not addressed in merits brief are deemed abandoned).

Under prong two, the Division must show a parent is unable or unwilling to correct the circumstances that led to the Division's involvement.  In re Guardianship of K.H.O., 161 N.J. 337, 348-49 (1999).  "The question is whether

the parent can become fit in time to meet the needs of the child." N.J. Div. of Youth & Family Servs. v. T.S., 417 N.J. Super. 228, 244 (App. Div. 2010).

There was substantial evidence to support the trial court's finding under prong two. Defendant did not attend the required services and never addressed her drug abuse issues. Lisa had been in placement for more than two years. In that time, defendant did not have a realistic plan for achieving reunification or make progress toward that goal. The court did not err in finding defendant was unwilling or unable to eliminate the harm facing Lisa, who had a right to permanency. See N.J. Div. of Youth & Family Servs. v. C.S., 367 N.J. Super. 76, 111 (App. Div. 2004) (providing that children have their own right to a "permanent, safe and stable placement").

Defendant challenges the trial court's finding that the third prong was satisfied. She seeks a remand for T.B. to be considered for kinship legal guardianship or adoption.

Under N.J.S.A. 30:4C-12.1(a), when the Division takes custody of a child, it must "initiate a search for relatives who may be willing and able to provide the care and support required by" that child. "It is the policy of [the Division] to place, whenever possible, children with relatives when those children are removed from the custody of their parents." N.J. Div. of Youth & Family Servs.

v. K.F., 353 N.J. Super. 623, 636 (App. Div. 2002). However, there is no presumption in favor of a relative. N.J. Div. of Youth & Family Servs. v. J.S., 433 N.J. Super. 69, 82 (App. Div. 2013).

Defendant identified two people as proposed caretakers—a sister, M.B., who could not take the child and Lana, her godmother—who could. Lana testified at the guardianship trial that she wanted to adopt Lisa, who had been in her care since she was ten-months old. If she were to adopt, she would continue to allow defendant to have contact with Lisa.

T.B. was identified as a potential placement option shortly before the termination trial. She lives in Virginia with her seven-year-old daughter, has a B.A. in psychology and a master's degree in clinical psychology. When Lisa was six-months old, T.B. offered to be a placement for Lisa, but defendant did not want Lisa to be that far away from her.

Defendant is critical of the Division for not identifying T.B. earlier because there was one reference in the Division's records from 2017 to a sister from out of state. Also, defendant herself was in foster care, which implied the Division should have known T.B. was her sister. Defendant relies on the case of Division of Youth & Family Services v. K.L.W., 419 N.J. Super. 568 (App. Div. 2011). In K.L.W., a judgment terminating parental rights was reversed

because the Division did not contact the child's maternal grandparent even though she had custody of the defendant's three other children. Id. at 581-83.

This case differs from K.L.W. Here, no evidence established that T.B. should have been identified on account of defendant's foster care placement nor was T.B.'s name or address listed in the Division record from 2017 about an out-of-state sister. Defendant did not identify T.B. because she wished to keep Lisa in New Jersey, a strategy that has worked to her disadvantage.

T.B. knew Lisa was in placement but did not press the issue with defendant and never alerted the Division she might be an alternative until shortly before the trial. By this time, the child had lived with Lana most of her life, was bonded with her and had no relationship with T.B. The expert testimony that the court found to be credible was that Lisa would be harmed if that bond were severed and that defendant would not be able to remediate that. On this record, we find no error by the trial court's conclusion that prong three was satisfied.

In evaluating prong four, the trial court must balance the children's relationships with their birth and resource parents and determine whether they will suffer greater harm from the termination of ties with the former than with the latter. In re Guardianship of J.N.H., 172 N.J. 440, 478 (2002). Prong four does not require that "no harm will befall the child as a result of the severing of

12

biological ties." K.H.O., 161 N.J. at 355. A court must consider "the child's age, her overall health and development, and the realistic likelihood that the [natural] parent will be capable of caring for the child in the near future." Id. at 357.

There was substantial credible evidence for the court's finding that the fourth prong of the best interest test was satisfied. The court found credible Dr. Wells' testimony. Her bonding evaluation concluded that Lana was the child's psychological parent because they had "a mutual intact and secure child to parent bond . . . ." The child had a strong emotional and psychological attachment to Lana. In Dr. Wells' opinion, if that bond were severed, Lisa would suffer emotional and psychological harm that defendant would not be able to mitigate. This would affect the child's ability to trust other people and negatively affect her self-esteem. In contrast, the child's bond with defendant was "familiar" and "fluid", meaning "in and out" because she was inconsistent in Lisa's life. Dr. Wells opined Lisa would not suffer irreparable harm if the relationship were severed with defendant. In her opinion, Lisa would have permanency and stability if adopted by Lana.

Defendant is critical of the court's treatment of Dr. Brown's testimony because it did not address it in any detail. Dr. Brown recommended

reunification—not at the present time—but as a goal. Defendant also needed housing and employment. Dr. Brown testified Lana was the child's psychological parent with a secure bond. However, he also found a secure bond with defendant, who he opined was "the central figure of emotional attachment" in Lisa's life. He testified that if the bond with defendant were severed, the child would suffer enduring psychological harm that was irreparable. It was his opinion, it would not be harmful to Lisa if she were removed from Lana and placed with either defendant or T.B. Although he and Dr. Wells had differing opinions on how securely bonded the child was with defendant, they both agreed that Lana was the child's psychological parent. Dr. Brown acknowledged that defendant was not presently able to reunify with the child.

The court has the ability to accept or reject, in whole or in part, the opinion testimony of an expert witness. Pansisi Custom Design Assocs., LLC v. City of Ocean City, 407 N.J. Super. 137, 143 (App. Div. 2009). The court found Dr. Wells' testimony to be credible. In doing so, it implicitly rejected Dr. Brown's opinions about defendant's ability to parent Lisa. In addition, Dr. Brown's opinion did not give any real consideration to defendant's noncompliance with services, her inconsistent visitation with Lisa or her failure to adequately address

her drug issues. And, the record provided the court with ample corroborating evidence for its finding that termination would not do more harm than good.

The court did not commit error under the Kinship Legal Guardianship (KLG) Notification Act, N.J.S.A. 30:4C-89 to -92, where current caretakers, who are eligible to become kinship legal guardians should be informed about this option. N.J.S.A. 30:4C-90(e). Lana was aware of the KLG option and testified she wanted to adopt Lisa. "[W]hen the permanency provided by adoption is available, kinship legal guardianship cannot be used as a defense to termination of parental rights under N.J.S.A. 30:4C-15.1a(3)." N.J. Div. of Youth & Family Servs. v. P.P., 180 N.J. 494, 512-13 (2004).

After carefully reviewing the record and the applicable legal principles, we conclude that any further arguments by defendant are without sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4982-18T1