# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0670-24

A.M.,

    Plaintiff-Appellant,

v.

MILLVILLE BOARD OF
EDUCATION,

    Defendant-Respondent.

_____

Submitted September 10, 2025 – Decided September 30, 2025

Before Judges Paganelli and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Cumberland County, Docket No. L-0239-22.

Rebenack, Aronow & Mascolo, LLP, Lesley A. O'Neill (Pfau Cochran Vertetis Amala, PLLC), and Christopher E. Love (Pfau Cochran Vertetis Amala, PLLC) of the Washington bar, admitted pro hac vice, attorneys for appellant (Lesley A. O'Neill and J. Silvio Mascolo, on the brief).

Reilly, McDevitt & Henrich, PC, attorneys for respondent (Suzanne I. Turpin and Tyler C. McDade, on the brief).

PER CURIAM

Plaintiff A.M.[1] appeals from the October 16, 2024 order granting defendant Millville Board of Education's (the Board) motion for summary judgment and dismissing the complaint with prejudice. Based on our review of the record and application of prevailing law, we vacate and remand for further proceedings.

I.

On May 3, 2022, A.M. filed a complaint against the Board pursuant to the Child Sexual Assault Act (CSA Act), N.J.S.A. 2A:61B-1, alleging a teacher, D.C., sexually assaulted her in 1980-1981 when she was a high school student. The Board moved for summary judgment, seeking dismissal of the complaint based on the applicable statute of limitations. On October 8, 2024, the trial court held a Lopez[2] hearing.

---

[1] We use initials and pseudonyms to preserve the confidentiality of the proceedings. R. 1:38-3(d)(9).

[2] Lopez v. Swyer, 62 N.J. 267 (1973) (holding the trial judge must conduct a preliminary hearing outside the presence of the jury to determine whether the plaintiff has established they are equitably entitled to the benefit of the discovery rule, considering all relevant facts and circumstances). The determination must be made "conscious of the equitable nature of the issue before him [or her]," id. at 275; to consider "elements of fairness pertaining to all parties." Lapka v. Porter Hayden Co., 162 N.J. 545, 558 (2000).

A-0670-24

We glean the following salient facts from the <u>Lopez</u> hearing record, at which A.M., her expert Jon R. Conte, Ph.D., and defense expert Barbara Ziv, M.D. testified.

In 1980, A.M. was a student at Millville High School where D.C. taught band. A.M. was a "pom-pom girl" and frequently in charge of storing equipment after band competitions. One night after a competition, D.C. cornered A.M. in the equipment room and forced her to perform fellatio.

A.M. testified that she received a phone call in 1993 from a prosecutor's office requesting she assist with criminal charges against D.C. relating to another victim. Although aware she had been sexually assaulted by D.C., A.M. declined to become involved in a criminal trial at that time because she "wanted to move on with [her] life." A.M.'s lawyer in this matter contacted A.M. in 2002 during counsel's representation of a victim in a pending matter against D.C. A.M. agreed to participate in that litigation and decided to file her own lawsuit.

A.M. testified she dropped out of high school after the sexual assault. She described pulling her own hair out from the time she left high school through her thirties, when she learned from her doctor she had trichotillomania, which may be the result of anxiety. At some point her symptoms subsided, but resurfaced after she discussed the sexual assault. A.M. further testified she had

3

A-0670-24

difficulty with intimacy as an adult. When asked if she "th[ought she] ha[d] any mental health issues," A.M. testified, "[w]ell, I don't know."

A.M. proffered Conte's testimony regarding psychological effects resulting from D.C.'s actions. Conte described his background as an academic and practitioner with decades of experience focused on the prevention and psychological consequences of childhood sexual abuse. Conte's methodology relied on a developmental approach—examining a person's risk and resiliency factors, life history before and after the abuse, and the specific characteristics of the abuse itself, such as its nature, frequency, and duration.

Conte testified A.M.'s childhood before the sexual assault was marked by adversity, including an unstable family life, parental absence, and various forms of trauma. Conte opined the sexual assault by D.C. significantly impacted A.M., causing sexual disinterest, difficulty forming intimate relationships, social isolation, anxiety and shame.

Conte testified A.M. had not connected many of these issues to the sexual assault and she remained at a pre-contemplative stage—explaining A.M. had not yet begun the process of insight and recovery typically initiated through treatment. He explained A.M. never pursued therapeutic treatment and only confronted and potentially understood how the assault affected her in 2022, after

4

being contacted by her present attorney. Conte opined that A.M. only minimally connected how D.C.'s assault affected her as an adult. He further recommended therapeutic treatment for A.M. to explore the full impact of the sexual assault on her life, stating

> [s]he is very honest in telling me that she can't remember dates, and she gets confused about things . . . . If you give her evidence, like the records, you can kind of help her put the pictures of her history together. But I don't think she understands it. She doesn't understand why sleeping on the couch was a relationship problem. Even though she says . . . he kind of disgusts me. You know, there's no angst. There's no awareness. There's no insight about it. So ideally, and in fact she might be good in a group with other survivors where she can listen to them talk about how the abuse affected them, and then she can make connections on her own.

Conte opined that A.M.'s reluctance to disclose or confront the assault was typical of child abuse survivors.

Dr. Ziv testified as the defense expert in forensic psychiatry, based on her background evaluating victims and perpetrators of sexual assault. Dr. Ziv opined that, while A.M. experienced a traumatic childhood and was the victim of a sexual assault as a teenager, there was no evidence D.C.'s actions caused a lasting psychiatric injury or altered the trajectory of A.M.'s life. The doctor testified A.M. failed most of her classes prior to the sexual assault and dropped

5

A-0670-24

out of high school. However, she noted A.M. returned to high school, earned her high school diploma, maintained long-term employment, and established stable adult relationships. Dr. Ziv opined there was no evidence—in medical records, any self-report, or her psychiatric evaluation—A.M. experienced any adult psychological or interpersonal problems related to D.C.'s sexual assault. Dr. Ziv testified A.M. presented as someone who had successfully compartmentalized and coped with her traumas, choosing not to live as a victim.

Dr. Ziv also opined delayed disclosure of sexual assault is common but does not, by itself, imply lack of understanding or harm to the victim. The doctor testified A.M. always understood what happened to her was wrong and that any shame, humiliation, or avoidance she experienced was normal given the circumstances—but did not constitute proof of psychological injury. Dr. Ziv ultimately opined there was no objective evidence the sexual assault by D.C. impacted A.M. in a clinically significant manner and A.M. failed to demonstrate causally connected psychiatric symptoms at any time since the incident.

At the conclusion of the <u>Lopez</u> hearing, the trial court entered an order granting the Board's summary judgment motion and dismissing the complaint with prejudice, finding for the reasons set forth on the record that A.M. failed to timely file the litigation under the CSA Act. The trial court relied on the

Supreme Court's guidance regarding the accrual date for her claim under Lopez and R.L.,[3] finding it was required to determine when a reasonable person subjected to childhood abuse would have discovered D.C.'s conduct caused injury and whether the statute should be tolled on equitable grounds.

Although the judge referenced the Lopez hearing record, he did not render credibility findings as to the witnesses' testimony. The judge found there was no evidence A.M. ever repressed or forgot the memory of the sexual assault by D.C., or that she failed to understand its nature or wrongfulness. The judge found A.M. "never received treatment, never saw a psychologist, a psychiatrist, [or] her own primary care physician for any damage that she says . . . occurred as a result of this sexual assault." The judge further found A.M.'s own expert described the injuries in general terms and acknowledged A.M. did not connect the assault to her present-day problems. The judge simultaneously found A.M. did not file her claim within seven years of the reasonable discovery of her injury and its causal connection to the assault despite being aware of both.

The judge also found the Board suffered substantial prejudice due to the passage of time, including the unavailability of key witnesses and the difficulty in mounting a defense to decades-old allegations.

---

[3] R.L. v. Voytac, 199 N.J. 285 (2009).

A-0670-24

II.

We recount the well-settled law governing our de novo review of summary judgment orders. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). A court should grant summary judgment "only when the evidence 'is so one-sided that [the moving] party must prevail as a matter of law.'" C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 306 (2023) (alteration in original) (quoting Rios v. Meda Pharm, Inc., 247 N.J. 1, 13 (2021)).

The key inquiry is whether the evidence presented, when viewed in the light most favorable to the non-moving party, is "'sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.'" C.V., 255 N.J. at 305 (quoting Samolyk v. Berthe, 251 N.J. 73, 78 (2022)). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[] all legitimate inferences from the facts in favor of the non-

moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alterations in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)).

III.

Our consideration of A.M.'s argument that the trial court erred in granting summary judgment to the Board under the CSA Act based on the "reasonable discovery" rule compels our vacating the summary judgment order and remanding pursuant to Rule 1:7-4 for the judge to make credibility determinations, along with further findings of fact and conclusions of law. Our analysis follows.

A.

In 2019, the Legislature amended various statutes, including N.J.S.A. 2A:14-2, to "increase[] the ability of victims of sexual abuse to pursue justice through the court system." W.S. v. Hildreth, 252 N.J. 506, 524 (2023) (alteration in original) (quoting Governor's Statement to S. 477 1 (May 3, 2019)). See also J.P. v. Smith, 444 N.J. Super. 507, 524-28 (App. Div. 2016) (analyzing whether

plaintiff's common law claims of sexual abuse were barred by the two-year statute of limitations under N.J.S.A. 2A:14-2).[4]

The amendment to N.J.S.A. 2A:14-2a(a)(1) in part expanded the time limitations for filing civil claims related to sexual abuse, permitting minor victims to file suit "within [thirty-seven] years after the minor reaches the age of majority, or within seven years from the date of reasonable discovery of the injury and its causal relationship to the act, whichever date is later."[5] N.J.S.A. 2A:61B-1, part of the CSA Act, now permits survivors of childhood sexual assault to file civil actions against the assailant or an individual "standing in loco parentis who knowingly permits or acquiesces in sexual abuse by any other person also commits sexual abuse[]" within the extended limitations period. See Doe v. Est. of C.V.O., 477 N.J. Super. 42, 57 (App. Div. 2023) (imposing liability against both "active" and "passive" sexual abusers).

The "discovery rule" under N.J.S.A. 2A:14-2a(a)(1) governs A.M.'s appeal.

_____

[4] At the same time, the Legislature amended the Tort Claims Act, N.J.S.A. 59:1-1 to :12-3, to eliminate the notice requirements for sexual abuse claims against public entities. See N.J.S.A. 59:8-3(b).

[5] A.M. was fifty-eight years old when she filed the complaint and proffers no argument that the thirty-seven-year extension is applicable to her claims.

A-0670-24

B.

A.M. contends, despite having a clear memory of the sexual assault and knowing that D.C.'s actions were wrong at the time of the assault, her claim did not accrue until 2022, when she first met with her expert, Conte, and connected the assault to her existing psychological issues. A.M. further argues she presented sufficient evidence at the Lopez hearing through Conte's testimony to establish a causal relationship between her psychological sequelae and the sexual abuse.

In R.L., the Court acknowledged the CSA Act is remedial legislation, which recognizes that child sexual abuse may cause psychological injury the victim does not connect to the abuse until years later. 199 N.J. at 298-99. This predicate forms the basis of the CSA Act discovery rule, expanding the accrual date as follows:

> The plain words of the [CSA] Act identify two events that must occur before a cause of action may accrue: the "reasonable discovery" of both (1) the existence of the injury and (2) the causal relationship of that injury to the acts of sexual abuse. This two-step pronged approach was established "[b]ecause of the unique nature of sexual abuse, which may only be discovered by an adult victim after years of repression."
>
> [Ibid. (second alteration in original.)]

A-0670-24

Under the "reasonable discovery" accrual standard, a plaintiff could have a conscious memory of sexual abuse but might not have reasonably discovered their psychological injuries were causally related. J.L. v. J.F., 317 N.J. Super. 418, 422 (App. Div. 1999). Under R.L., a trial court should consider the following when evaluating the reasonableness of a plaintiff's claims:

> [T]he age at the time the sexual abuse occurred; any threats the wrongdoer may have made to plaintiff; the length of time that passed between the end of the abuse and the emergence of the injuries; the nature of the injuries; the difficulty in discovering certain injuries; and whether the delay may "have peculiarly or unusually prejudiced the defendant."
>
> [199 N.J. at 300 (quoting Lopez, 62 N.J. at 276).]

Although it is essentially a factual inquiry, "[t]he decision requires more than a single factual determination; it should be made with a conscious[ness] of the equitable nature of the issue." Vispisiano v. Ashland Chem. Co., 107 N.J. 416, 428 (1987) (second alteration in original) (quoting Lynch v. Rubacky, 85 N.J. 65, 73-74 (1981)). Since the discovery rule is inherently a rule of equity,

> each case calls for an identification, evaluation, and weighing of the equitable claims of the parties . . . "not so much upon the facts as determined by the trial court as upon the legal significance of [those] facts specifically in terms of knowledge of fault as a constituent element of the discovery rule."

A-0670-24

[Ibid. (alteration in original) (citation omitted) (quoting Lynch, 85 N.J. at 70).]

Viewing the trial court's decision at the conclusion of the Lopez hearing under this lens, we are constrained to vacate and remand for the judge to render the required credibility findings underpinning his factual and legal conclusions. Rule 1:7-4(a) states, in pertinent part, "[t]he court shall, by an opinion or memorandum decision, either written or oral, find the facts and state its conclusions of law thereon in all actions tried without a jury, on every motion decided by a written order that is appealable as of right." A trial court's legal conclusions must be tethered to the underlying facts found to be credible so that we may substantively address the issues on appeal. See Heinl v. Heinl, 287 N.J. Super. 337, 347 (App. Div. 1996).

This is particularly significant where the evidence is largely testimonial and the outcome rests on the trial judge's credibility determinations. Gnall v. Gnall, 222 N.J. 414, 428 (2015); see also J.L., 317 N.J. Super. at 430 (plenary hearings are generally held pursuant to Lopez since credibility is usually an issue to determine a plaintiff's state of mind regarding discovery of the injury and causation). "Ultimately, the factfinder, here the judge, must weigh and evaluate the experts' opinions, including their credibility, to fulfill the judge's responsibility in reaching a reasoned, just and factually supported conclusion."

A-0670-24

Pansini Custom Design Assocs., v. City of Ocean City, 407 N.J. Super. 137, 144 (App. Div. 2009).

The competing experts here opined on the core issues of whether A.M. suffered a physical or psychological injury causally connected to D.C.'s sexual assault. Conte testified A.M. suffered psychological sequelae stemming from D.C.'s actions. Conte testified in part that A.M.'s reluctance to sleep in the same bed with a prior boyfriend was causally connected to the assault, but that A.M. did not yet fully understand that connection. Conte opined A.M.'s awareness of some of the psychological effects resulting from the sexual assault only began in 2022, through his examination of A.M. in this litigation.

On the other hand, the Board's expert testified A.M. did not sustain any psychological injuries stemming from D.C.'s sexual assault. Rather, Dr. Ziv determined there was no evidence to support a finding that the sexual abuse affected A.M.'s life and A.M. "doesn't describe herself as having trouble with relationships."

Because the expert witnesses offer contrary opinions on causation, which directly informs application of the accrual date under the CSA Act, the trial court "must weigh and evaluate the experts' opinions, including their credibility, to

14

fulfill the judge's responsibility in reaching a reasoned, just and factually supported conclusion." Pansini Custom Design Assocs., 407 N.J. Super. at 144.

If Conte's testimony is deemed credible, the trial court might conclude A.M. proved, through her expert, that she suffered psychological injury causally related to the sexual assault but did not begin to realize her injury until 2022. Such predicate facts, based on fulsome credibility determinations, could determine whether A.M. timely filed her lawsuit under the CSA Act's discovery rule. Thus, the trial court should also consider A.M.'s credibility in determining the accrual date for her claims.

Without credibility determinations informing the court's factual findings and conclusions of law placed on the record, we are "left to conjecture as to what the judge may have had in mind" and are unable to address the merits of A.M.'s claims. Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990); see T.B. v. I.W., 479 N.J. Super. 404, 413 (App. Div. 2024) (reversing and remanding to the trial court when it "failed to make any credibility determinations regarding [the] plaintiff's testimony").

To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary, or the argument was without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Vacated and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

16

A-0670-24